IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALISA B.[1],

       Plaintiff,

                                **Civil Action 2:23-cv-2622**
   v.                          **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

**OPINION AND ORDER**

     Plaintiff, Alisa B., brings this action under 42 U.S.C. § 405(g) for review of a final decision

of the Commissioner of Social Security ("Commissioner") denying her application for social

security disability insurance benefits ("DIB"). This matter is before the Court for consideration of

Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition

(ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 8).  For the

reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors (ECF No. 10) and

**AFFIRMS** the Commissioner's decision.

## I.   BACKGROUND

     Plaintiff initially filed for both Disability Benefits and Supplemental Security Income on

September 27, 2010.  Plaintiff's applications were denied initially in January 2011and upon

reconsideration in June 2011.  Plaintiff sought a *de novo* hearing before an administrative law

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

1

judge. Administrative Law Judge Karen Kostol ("ALJ Kostol") held a hearing on June 26, 2012 and issued a decision on July 13, 2012. (R. at 74-93.) Plaintiff did not appeal. Subsequently, Plaintiff filed a second application for disability benefits on April 7, 2015. That application was denied initially on August 10, 2015, and Plaintiff again did not pursue an appeal. (R. at 19.)

Plaintiff filed her current application for disability benefits on September 21, 2021, alleging that she has been disabled since August 1, 2021, due to blood clots in her lungs and legs, generalized anxiety disorder, major depression, PTSD, anger problems, lower back herniated and bulging discs, migraines/sees auras, ADHD, hypothyroidism, and fibromyalgia. (R. at 215-21, 249.)[2] Plaintiff's application was denied initially in November 2021and upon reconsideration in March 2022. (R. at 116-20, 128-32.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 175-85.) Administrative Law Judge Brian Crockett (the "ALJ" or "ALJ Crockett") held a telephone hearing, on August 10, 2022. (R. at 44-73.) Plaintiff, who was represented by counsel, appeared and testified at the hearing. (*Id.*) A vocational expert ("VE") also appeared and testified. (*Id.*) On October 5, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 16-43.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.)

## II. RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript, including Plaintiff's medical record, function and disability reports, and testimony about her conditions and resulting limitations.

---

[2] Plaintiff cites an alleged onset date of July 29, 2019, in her Statement of Specific Errors. (ECF No. 10.) The Court considers this to be a typographical error.

2

Given the claimed errors raised by Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite it as necessary in the discussion of the parties' arguments below.

## III. ADMINISTRATIVE DECISION

On October 5, 2022, the ALJ issued his decision. (R. at 16-43.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2026. (R. at 22.) Then, at step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2021, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: type 2 diabetes mellitus; pulmonary embolism; fibromyalgia; lumbar degenerative disc disease; lumbar radiculopathy; obesity; depression; and generalized anxiety disorder. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except can perform all posturals occasionally, except no climbing ladders, ropes, or scaffolds; avoids concentrated exposure to extreme cold, extreme heat, humidity, vibrations, and pulmonary irritants such as fumes, odors, dusts, and gases; avoids all hazards such as unprotected heights, uneven surfaces, or heavy machinery with unshielded moving mechanical parts; affords the individual a sit/stand option which would allow them to briefly for up to 2 minutes alternate between the sitting or standing position at 30-minute intervals throughout the workday without breaking the task at hand; the individual can understand, remember [and/or] carry out simple instructions and can use judgment to make simple work-related decisions, but should avoid high production work environments; and requires no more than occasional interaction with the general public.

(R. at 26.)

At step four of the sequential process, relying on the VE's testimony, the ALJ determined that Plaintiff is unable to perform her past relevant work as a hospital admitting clerk, equipment truck driving, grocery clerk, stocker, medical technician, hospital cleaner, or a medical assistant. (R. at 36-37.) Further relying on the VE's testimony, the ALJ concluded at Step 5, that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as an addressor, call out operator, or a document preparer. (R. at 37-38.) He therefore concluded that Plaintiff has not been disabled since August 1, 2021. (R. at 38.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

4

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

Plaintiff raises three issues in her Statement of Errors. First, Plaintiff contends that the ALJ erred at Step Two of the sequential evaluation when he failed to properly consider all of Plaintiff's impairments in formulating the RFC. (ECF No. 10 at 10-14.) Further, Plaintiff

5

asserts that the ALJ failed to properly weigh the opinion of Plaintiff's primary care nurse practitioner, Katie Inclan, such that his opinion is not supported by substantial evidence. (*Id.* at 14-18.) Finally, Plaintiff argues that the ALJ applied the wrong standard of review when adopting the previous ALJ's findings. (*Id.* at 18-22.) The Court finds all three of Plaintiff's claimed errors to be without merit and concludes that the ALJ's decision is supported by substantial evidence.

### A. The ALJ's Evaluation of Plaintiff's Fibromyalgia and Migraine Headaches

Plaintiff's first issue appears to be limited to the ALJ's evaluation of Plaintiff's fibromyalgia and migraine headaches. Although raised under the same claimed error, Plaintiff's complaints regarding the ALJ's treatment of these two specific impairments appear to be distinct. And, to be clear, much of Plaintiff's argument is focused on the issue of her migraines. Plaintiff's argument regarding her fibromyalgia is significantly less well-articulated. Nevertheless, the Court will discuss both of these impairments, in turn, starting with Plaintiff's fibromyalgia.

#### 1. *Fibromyalgia*

As Plaintiff explains it, the ALJ found Plaintiff's fibromyalgia to be a severe impairment despite the fact that that there was no evidence of the signs, symptoms, or co-occurring conditions needed to establish the disease. (ECF No. 10 at 10-14.) Plaintiff's explanation is borne out by the ALJ's acknowledgment in his discussion that he afforded Plaintiff the benefit of the doubt as to this impairment. (R. at 22.) Indeed, the ALJ discussed Plaintiff's fibromyalgia in this way:

> As to the determination that fibromyalgia is a severe medically determinable impairment, while [Plaintiff] is prescribed medications used to treat this impairment, she has not seen any specialists and the objective requirements, including at least 11 positive tender points on physical examination found bilaterally and both above and below the waist that are determined by a physician performing digital palpitation with an approximate force of nine pounds; evidence that other disorders that could cause the symptoms or signs were excluded; and repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions needed to establish this impairment as a medically determinable impairment are not contained in the evidence (See Exhibits B1F-B17F and B19F-B26F) (SSR 12-2p). Nonetheless, in giving [Plaintiff] some benefit of the doubt as to the fibromyalgia related symptoms causing more than minimal limitations in functioning, the undersigned has found fibromyalgia to be a severe medically determinable impairment.

(*Id.*)  Nevertheless, according to Plaintiff, the ALJ erred because he "fail[ed] to consider the medical evidence documenting Plaintiff's symptoms related to her severe impairments, especially fibromyalgia, necessitating a remand of this matter."  (ECF No. 10 at 1l.)  Plaintiff's argument mischaracterizes the ALJ's treatment of her fibromyalgia.

When discussing whether Plaintiff's fibromyalgia meets a listing, the ALJ determined:

> As to her impairment of fibromyalgia, while there is no specific Listing for fibromyalgia, we can determine whether it medically equals a Listing (for example 14.09D, inflammatory arthritis), or whether it medically equals a Listing in combination with at least one other medically determinable impairment. In this case, [Plaintiff] has had routine and limited treatment with her primary care physician and there is no evidence of arthritis or other related impairments to support medically equaling a Listing (Exhibit B26F).

(R. at 23-24.)

When later discussing Plaintiff's fibromyalgia in relation to her RFC, however, the ALJ noted:

> Based on the medical evidence of record discussed above, the undersigned has found that [Plaintiff]'s allegations as to the intensity and limiting effects of her fibromyalgia, lumbar degenerative disc disease, lumbar radiculopathy, diabetes mellitus, and obesity are not fully consistent with the medical evidence of record

and do not preclude [Plaintiff] from performing the limited range of work activity prescribed in the residual functional capacity. [Plaintiff]'s diabetes mellitus is controlled with medication, and examinations have not shown any shortness of breath, joint deformities, or strength deficits caused by obesity. Accordingly, these impairments are accommodated by the limitation to sedentary exertional work with occasional posturals except no climbing ladders, ropes, or scaffolds and no exposure to hazards.

Further, [Plaintiff]'s allegations as to the severity of her pain and degree of her limitation caused by her lumbar impairments and fibromyalgia are not consistent to the degree alleged with the medical evidence of record. As to her fibromyalgia, [Plaintiff] has not had any treatment with a specialist and the record has not shown any hospitalizations for fibromyalgia flare ups. While she has alleged significant pain, as noted above, [Plaintiff] was not in acute distress during her office visits, which is contrary to allegations of constant and debilitating pain. Further, she consistently had a normal gait during treatment, she required no assistive device, and she generally had 4/5-5/5 in the bilateral lower extremities. These findings are not consistent with significant issues with mobility. Additionally, she has had treatment for pain, which included medications, and she has reported she is able to drive, prepare simple meals, shop in stores, eat out occasionally, and help with cleaning and laundry. Accordingly, the [ALJ] has reduced [Plaintiff] to sedentary exertional work that requires limited limiting,[4] standing, and walking, and has included a sit/stand option to allow her to change positions for pain and fatigue; occasional posturals and no climbing ladders, ropes, or scaffolds to accommodate her pain and fatigue; and environmental accommodations to reduce triggering her pain. Her ability to perform this range of work is supported by her limited treatment for fibromyalgia, examinations that did not reveal numerous tender points or any acute distress, and her activities of daily living.

(R. at 30-31.)

SSR 12-2p requires only that, after a finding that Plaintiff's fibromyalgia was a medically determinable impairment, the ALJ consider fibromyalgia in the remaining steps of the sequential evaluation process.

SSR 12-2p describes criteria for establishing that a person has a medically determinable impairment [ ] of fibromyalgia , *id.* at *2–3, the sources of evidence the ALJ may look to, *id.* at *3–4, and how a claimant's subjective assertions of pain

---

[4] The Court construes this is a typographical error and that the ALJ intended the word "sitting."

and functional limitations are evaluated, *id.* at \*4. [SSR 12-2p] also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims for SSI. *Id.* at \*5–6. Importantly, ... SSR 12-2p ... merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia.

*Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–99 (6th Cir. 2016).  Simply put, "a

*diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits[.]"

*Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original)

(citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have a severe

case of fibromyalgia as to be totally disabled from working . . . but most do not and the question

is whether [claimant] is one of the minority.") (citations omitted)).  As such, in claims involving

fibromyalgia, an ALJ must "decide . . . if the claimant's pain is so severe as to impose limitations

rendering her disabled."  *Markesha D. v. Comm'r of Soc. Sec.,* No. 2:21-CV-4515, 2022 WL

1701915, at \*4 (S.D. Ohio May 27, 2022), *report and recommendation adopted*, No. 2:21-CV-

4515, 2022 WL 4094511 (S.D. Ohio Sept. 7, 2022) (citations omitted).

The above excerpts from the ALJ's decision confirm that the ALJ considered the matter

of Plaintiff's alleged pain and explained how he accounted for it in formulating the RFC.

Plaintiff's argument to the contrary defies the plain language of the ALJ's discussion.  And, not

only that, Plaintiff also fails to highlight evidence demonstrating that her fibromyalgia required

greater restrictions than those adopted by the ALJ.  This matters because Plaintiff bears the

burden of proving her entitlement to a more restrictive RFC.  *Jordan v. Comm'r of Soc. Sec.*, 548

F.3d 417, 423 (6th Cir. 2008); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

That is, diagnoses alone say nothing of the severity of a claimant's symptoms or any resulting

functional limitations.  *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014)

("[D]isability is determined by the functional limitations imposed by a condition, not the mere

diagnosis of it.") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).  Plaintiff has not

met that burden here.  Accordingly, this claim of error is not well taken.

### 2.    *Migraine Headaches*

With respect to her migraine headaches, Plaintiff contends that the ALJ erred by failing

to conclude that Plaintiff's headaches equaled listing 11.02B, pursuant to Ruling 19-4p.  The

Court disagrees.

The ALJ had this to say about Plaintiff's migraines:

> Additionally, the claimant has alleged disability based on migraines but the
> requirements of Social Security Ruling 19-4p have not been met (*See* Exhibits B1F-
> B17F, and B19F-B26F). We will not establish the existence of a medically
> determinable impairment based only on a diagnosis or symptoms, and based on the
> objective medical evidence of record, the undersigned has not found migraines or
> headaches to be a medically determinable impairment. However, the claimant's
> headaches have been in combination with her other severe impairments as a
> possible symptom and have been considered in combination with these
> impairments in reaching the residual functional capacity.

(R. at 22.)

Plaintiff argues that the treatment notes and her testimony satisfy all the elements of

Listing 11.02B. According to Plaintiff, pursuant to Ruling 19-4p, her continued headaches

equaled the criteria Listing 11.02B because she had the requisite number of headaches while

being medication compliant. (ECF No. 10 at 13.)  Plaintiff overstates.

Briefly, SSR 19-4p provides specific guidance on how "primary headache disorders"

such as migraines are established and evaluated. *See* SSR 19-4p, 2019 WL 4169635 (Aug. 26,

2019).  Specifically, SSR 19-4p explains that there is no Step Three listing for primary headache

disorder, but these impairments may be found to be medically equivalent to Listing 11.02B. SSR 19-4p, 2019 WL 4169635, at *7.

Under 20 C.F.R. § 404.1526, "an impairment is medically equivalent to a listed impairment ... if it is at least equal in severity and duration to the criteria of any listed impairment." The regulation states in relevant part that a finding of medical equivalence can be made where (b)(1) the claimant has an impairment found among the listed impairments that (A) does not meet all of the requirements of the listing or, (B) meets all of the requirements but "one or more of the findings is not as severe as specified in the particular listing" provided that "other findings related to [the] impairment ... are at least of equal medical significance to the required criteria." *Id.* "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment*."* *Broderick v. Kijakazi*, No. 2:21-CV-12480, 2022 WL 19518407, at *14 (E.D. Mich. July 12, 2022), *report and recommendation adopted sub nom. Broderick v. Comm'r of Soc. Sec.*, No. CV 21-12480, 2023 WL 2711628 (E.D. Mich. Mar. 30, 2023) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990) (emphasis in original)).

To determine whether an impairment is equivalent to Listing 11.02B, an ALJ is to consider:

 [a] detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as

11

interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7.

Here, Plaintiff's argument that her migraine headaches medically *equaled* Listing 11.02B fails. Plaintiff asserts only that she had at least five headaches per month. Even accepting this as true, experiencing multiple headaches monthly, standing alone, does not demonstrate that Plaintiff's condition medically equaled Listing 11.02. Plaintiff fails to explain how she satisfies the remaining criteria necessary to reach the conclusion that her headaches medically equaled Listing 11.02. Such failure is fatal to her argument on this issue.

Similarly, to the extent that Plaintiff argues that the ALJ did not consider her migraine headaches in formulating the RFC, this argument also fails. The ALJ noted Plaintiff's testimony that she suffered migraines 5-7 days per month. (R. at 27.) Further, he noted that Plaintiff "did have some emergency room visits for migraines in late 2020 and early 2021"[5] but also noted that a "CT of the brain showed no acute findings in January and June 2021 (R. at 28 citing R. at 322-654; 655-679; 759-814; 916-1008; and 1035-1424.) Additionally, the ALJ acknowledged that the prior ALJ decision did not reveal any treatment for Plaintiff's migraines and also stated that, as of the alleged onset date of August 2021, "the record showed no changes to [Plaintiff's] treatment for … headaches." (R. at 28.) The ALJ then went on to cite various treatment notes from later 2021 indicating that Plaintiff had denied any headaches. (R. at 29.) At the same time, the ALJ noted an emergency room visit on November 19, 2021, for headache, vomiting,

---

[5] Plaintiff asserts that the ALJ misstated the evidence because she had emergency room visits for headaches after early 2021. (ECF No. 10 at 12.) As discussed, the ALJ also cited later treatment notes.

shortness of breath, and chills but also pointed out that a CT of the brain showed no acute

findings. (*Id.*) The ALJ also acknowledged that the record reflected Plaintiff's limited treatment

for migraines in 2022 but also that Plaintiff had not reported headaches at a primary care visit in

January 2022. (*Id.*) Significantly, Plaintiff points to no medical opinion that she has greater

limitations as a result of her migraines than those found by the ALJ. For all of these reasons,

Plaintiff's claim that the ALJ improperly considered her migraine headaches is without merit.

### B. Evaluation of Medical Source Opinions

Plaintiff next argues that the ALJ erred when he failed to articulate how he evaluated the

supportability and consistency of family nurse practitioner, Katie Joclan,[6] PA-C's opinion. (ECF

No. 10 at 14-18.) In Plaintiff's view, the ALJ did not provide a coherent explanation that builds

an accurate and logical bridge from the evidence to the conclusions in the RFC. The Court

disagrees.

Because Plaintiff filed her application after March 27, 2017, it is governed by the

relatively new regulations describing how evidence is categorized, considered, and articulated

when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A claimant's RFC is

an assessment of "the most [a claimant] can still do despite her limitations." 20 C.F.R. §

404.1545(a)(1) (2012). An ALJ must assess a claimant's RFC based on all the relevant evidence

in a claimant's case file. *Id.* The governing regulations describe five different categories of

evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4)

evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §

404.1513(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory

---

[6]The ALJ refers to the name as Joclan, the treatment records indicate it is Inclan.

findings, or both." 20 C.F.R. § 404.1513(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4).

"Medical opinion" and "prior administrative medical finding" are defined as follows:

(2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

* * *

(5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .

(v) . . . your residual functional capacity;

(vi) Whether your impairment(s) meets the duration requirement; and

(vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. §§ 404.1513(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination

15

or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. § 404.1520c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. § 404.1520c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. § 404.1520c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July

2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4)

(differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further

clarifying the difference between "supportability" and "consistency" for purposes of the post-

March 27, 2017 regulations)).

Ms. Inclan completed a Medical Source Statement in April 2022 in which she opined that

Plaintiff could stand, sit, and walk for fifteen minutes at a time and less than two hours per day;

would need to take breaks every 15 minutes to walk for 15 minutes; and would need to take three

to four unscheduled, 15-30 minutes breaks each eight-hour workday.  Further, Plaintiff would

need to elevate her legs above her heart for 75% of the day; could occasionally lift 10 pounds;

and could rarely lift 20 pounds.  Ms. Inclan found that Plaintiff had significant limitations in

handling, fingering, and reaching, would be absent more than four times per month due to her

impairments, and that she was incapable of even low stress work.  (R. at 1715-18.)

The ALJ determined that Ms. Inclan's opinion was not persuasive, explaining

> [Ms. Inclan] did not support her opinion with any objective findings or rationale for
> those conclusions and only included [Plaintiff]'s impairments and symptoms. For
> example, she reported [Plaintiff] needs to elevate her legs due to pulmonary
> embolism but did not support that opinion by citing to examinations showing edema
> and this opinion is not consistent with her treatment notes that failed to show any
> shortness of breath or edema and failed to indicate that [Plaintiff] needs to elevate
> her feet. It is also not consistent with other examinations that failed to show these
> symptoms and her limited treatment. In addition, the opinion that [Plaintiff] cannot
> even perform sedentary exertional work is not consistent with examinations with
> pain management that generally showed normal gait, adequate if not normal
> strength, normal sensation, and no distress upon examination. Finally, her other
> limitations, including grip and reaching abnormalities, off task of 15 percent of a
> workday, incapable of low stress work, and absent more than 4 days per month due
> to pain and fibromyalgia flare-ups is not consistent with [Plaintiff]'s limited
> treatment for fibromyalgia, her lack of treatment with a specialist, the lack of
> examinations showing at least 11 tender points, the lack of hospitalizations for
> fibromyalgia flare-ups, and pain management records showing decreased pain with

injections, no grip or fine manipulation limitations, and no distress upon examination. While such significant limitations may be accurate during an extreme flare up of her physical pain, the record does not support frequent extreme flare-ups or significant recovery times to support such significant limitations for extended periods.

(R. at 33.)

Elsewhere in his decision, the ALJ discussed the following:

Based on the medical evidence of her impairment of pulmonary embolism, the undersigned has not found her allegations of significant shortness of breath or lower extremity edema consistent with the record. While she reported significant shortness of breath and an inability to walk to her mailbox without getting winded, the undersigned found no reports to her primary care physician of being winded with ambulation and examinations with her primary care physician did not show shortness of breath. Also, while she testified her doctor wanted her to be on oxygen but she fought him and does not want it, the undersigned found no discussions of a need to be on oxygen since her hospitalization and her SPO2 at primary care physician visits has been between 96-98 percent (Exhibits B26F/5, 16, 27, and 40). Although she testified she needs to elevate her legs most of the day, the undersigned has not found any reports to her primary care physician of a need to do this and examinations did not generally indicate any lower extremity edema. While the undersigned has found this impairment would cause more than minimal limitations in her ability to perform work activity, any shortness of breath or occasional edema are fully accommodated in the residual functional capacity by limiting her to sedentary exertional work with a sit/stand option; occasional posturals and no climbing ladders, ropes, or scaffolds; and environmental accommodations to reduce triggering shortness of breath. The undersigned has not found a limitation of elevation of the legs warranted based on the lack of objective evidence of significant and recurrent lower extremity edema and the lack of documentation of this need in treatment records.

(R. at 32.)

As the above excerpts demonstrate, Plaintiff's characterization of the ALJ's analysis is without merit. Turning first to the issue of supportability, the ALJ discussed that Ms. Inclan's opinion was not supported by her own objective findings. For example, with respect to Plaintiff's alleged need to elevate her legs above her heart for 75 percent of the work day due to a pulmonary embolism, the ALJ noted that Ms. Inclan did not cite findings of edema. Further,

18

the ALJ noted that Ms. Inclan's conclusions regarding such a limitation were not supported by her various treatment notes finding no shortness of breath or edema.  And, as to the issue of consistency as it relates to this limitation, the ALJ considered that notes from other medical providers confirmed only limited treatment for Plaintiff's condition.

The ALJ also set forth his reasoning for finding other portions of Ms. Inclan's opinion unpersuasive.  For example, with respect to the opinion that Plaintiff could not engage in sedentary work, the ALJ noted that such a conclusion was inconsistent with other treatment notes demonstrating Plaintiff's normal gait, adequate strength, normal sensation and no acute distress. Similarly, with respect to Ms. Inclan's opined limitations regarding reaching, handling or fingering, or off task time arising from, in part, Plaintiff's fibromyalgia flareups, the ALJ noted Plaintiff's limited treatment for fibromyalgia and the lack of examinations showing at least 11 tender points.

In the face of this, Plaintiff cites evidence which she contends supports Ms. Inclan's opinion and asserts that the ALJ failed to consider the totality of the medical evidence.   That there is evidence in the record supporting Plaintiff's position does not minimize the substantial evidence cited by the ALJ.  To the extent that Plaintiff asks the Court to reweigh the evidence, the Court declines.  *Avers v. Kijakazi*, 2021 WL 4291228, at *6 (N.D. Ohio Sept. 21, 2021) ("To the extent Plaintiff is asking the court to reweigh the evidence *de novo* and arrive at its own RFC determination, such an invitation exceeds the scope of this court's review.")  To be sure, the ALJ cannot ignore evidence favorable to the Plaintiff, but the Court is satisfied that the ALJ did not do that here.  Indeed, contrary to Plaintiff's description of the ALJ's efforts, the ALJ not only

19

considered the totality of the medical evidence but did so at great length. (R. at 28-32.)

Accordingly, there is no merit to Plaintiff's argument on this issue.

### C. The ALJ's Compliance with *Drummond* and *Earley*

Plaintiff argues that ALJ Crockett applied the wrong legal standard, and in doing so, found that he was bound by the prior ALJ's decision. (ECF No. 10 at 18-22.) In response, the Commissioner maintains that ALJ Crockett reasonably assessed Plaintiff's application in light of AR 98-4(6) and also satisfied the principles set forth in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). (ECF No. 11 at 11-15.) The Court agrees with the Commissioner.

In this Circuit, the principles of *res judicata* apply to both disability applicants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997). Specifically, in *Drummond*, the Sixth Circuit found that, absent evidence of "changed circumstances" relating to an applicant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. at 842. In response to *Drummond*, the Social Security Administration subsequently issued Acquiescence Ruling ("AR") 98-4(6), which provides:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

Thereafter, the Sixth Circuit clarified the scope of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). In *Earley*, the Sixth Circuit explained that *res judicata* only

applies if an applicant files a subsequent application for the same period of disability that was rejected in the prior decision. *Id*. at 933. The Sixth Circuit pointed out that *Drummond* was never intended to extend *res judicata* to foreclose review of a new application for a new period of time, reasoning that "[a]ny earlier proceeding that found or rejected the onset of disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Id*. Rather, in cases where disability is alleged for a distinct period of time, the application is entitled to a "fresh look." *Id*. This, of course, is not to say that a subsequent ALJ cannot consider a prior ALJ's decision. After all, in the absence of new and additional evidence, the subsequent ALJ may treat the prior ALJ's findings as "legitimate, albeit not binding, consideration in reviewing a second application." *Id*.

Nonetheless, in order to effectuate the intent of *Earley*, a meaningful "fresh look" must provide an applicant with an "opportunity for a full hearing, with no presumptions applied, when the claim covers a new period of time not addressed in the prior hearing." *Ferrell v. Berryhill*, No. 1:16-CV-00050, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019); *see also*, *Maynard v. Comm'r of Soc. Sec.*, No. 2:18-CV-959, 2019 WL 3334327, at *6 (S.D. Ohio July 25, 2019) (Jolson, M.J.), *report and recommendation adopted*, No. 2:18-CV-959, 2019 WL 3891859 (S.D. Ohio Aug. 16, 2019) (Smith, D.J.). Otherwise, an applicant whose claim is heard before an ALJ applying the presumption set forth in AR 98-4(6) faces "an unwarranted procedural burden… at the second hearing." *Id*. In short, when evaluating a subsequent application for benefits for a distinct period of time, an ALJ may consider a previous ALJ's RFC assessment but errs "when he considers the previous RFC a mandatory starting point for the analysis." *Gale v. Comm'r of Soc.*

*Sec.*, No. 1:18-CV-859, 2019 WL 8016516, at *5 (W.D. Mich. Apr. 17, 2019), *report and recommendation adopted*, No. 1:18-CV-859, 2020 WL 871201 (W.D. Mich. Feb. 21, 2020); *see also Dilauro v. Comm'r of Soc. Sec.*, No. 5:19 CV 2691, 2020 WL 9259708, at *10 (N.D. Ohio Nov. 19, 2020), *report and recommendation adopted*, No. 5:19-CV-2691, 2021 WL 1175415 (N.D. Ohio Mar. 29, 2021) ("[T]he ALJ considered this new evidence… but from a starting point of evaluating whether it was compatible with the prior RFC…. That violates the statutory framework governing disability claims."); *Dunn v. Comm'r of Soc. Sec.*, 2018 WL 4574831, at *3 (W.D. Mich.) ("In performing this analysis, ALJ Jones' decision was essentially a review of ALJ Moscow Michaelson's RFC findings ... rather than a 'fresh review' of plaintiff's 'new application for a new period of time.'").

Prior to assessing Plaintiff's RFC determination, ALJ Crockett recited the standard set forth by AR 98-4(6) and *Drummond*, stating specifically

> Because there is a final, binding Administrative Law Judge decision on [Plaintiff]'s prior application, the undersigned is directed to apply the principles set forth in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and Social Security Administration, AR 98-4(6); and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990) and Social Security Administration, AR 98-3(6). Under those precedents, a prior Administrative Law Judge's findings on issues required by the sequential evaluation process are controlling in a subsequent application by the same claimant under the same title of the Act, unless there is new and material evidence. New evidence is considered material if it differs from the evidence presented in the prior claim and warrants a different finding than that previously made (See AR 98-3(6) and AR 98-4(6)).

(R. at 19-20.)

Later, when discussing the implications of AR 98-4(6), ALJ Crockett explained:

> In making this finding, the [ALJ] has considered the prior Administrative Law Judge's decision of July 13, 2012, consistent with Acquiescence Ruling 98-4(6),

but has [not][7] adopted the residual functional capacity finding from that decision in the current decision (Exhibit B1A) (AR 98-4(6)). That finding is remote and [Plaintiff] has worked full time jobs since that decision, and the record contains new and material evidence of new severe impairments that impose more limitations regarding [Plaintiff]'s physical functional capacity. Also, based on current mental status evaluations, the undersigned has not adopted word for word the mental residual functional capacity but has included the general limitations. Accordingly, the undersigned has not found the prior Administrative Law Judge's opinion persuasive for the current adjudicatory period, as it is remote and not fully consistent with the objective medical evidence of record since the alleged onset date, as discussed below.

(R. at 26.)

Plaintiff's argument appears limited to her psychological limitations.  As Plaintiff explains it, "the ALJ erroneously adopted the findings of the state Agency reviewers who adopted the findings of the prior ALJ determination."  (ECF No. 10 at 19.)  ALJ Crockett discussed the relevant state Agency reviewers findings as follows:

In making this determination, the undersigned has considered the Prior Administrative Findings of Courtney Zeune, Psy.D. and Janet Souder, PsyD., and he has found them to be persuasive (Exhibits B3A and B5A). Both found [Plaintiff] has moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting and managing oneself. These findings are supported by their explanations that mental status evaluations, while showing euthymic to depressed mood and some anxiety, did not show any significant behavioral or cognitive deficits. These findings are consistent with her mental health treatment, her lack of hospitalizations for psychiatric issues, her normal psychiatric examinations at primary care physician and pain management visits, and her activities of daily living that include driving, shopping in stores, going out alone, shopping by mail and computer, paying bills, handling finances, going out to eat once a month, and playing on her phone (Exhibit 11E/3-5).

(R. at 35.)

---

[7] ALJ Crockett appears to have omitted the word "not" in this sentence.  Inclusion of the word "not" is consistent with a fair reading of the paragraph.  Further, a review of the prior ALJ's RFC confirms that ALJ Crockett did not adopt that RFC in its entirety.  (*See* R. at 81-82.)

23

A review of the Prior Administrative Findings confirms that the state Agency reviewers adopted the earlier ALJ decision.  (R. at 96-102; 107-113 "The MRFC given is an adoption of the ALJ decision dated 7/13/2012 and is adopted under AR 98-4.")   Importantly, however, prior to doing so, both reviewers considered new and material evidence in the record dated after the earlier ALJ decision.  Plaintiff's argument to the contrary grossly mischaracterizes the record.  Indeed, a cursory review of their opinions reveals that they looked to treatment notes from August 2021 reflecting diagnoses of recurrent major depressive disorder and generalized anxiety.  (*Id*.)  Further, they cited treatment notes from October 2021 revealing diagnoses of PTSD and bipolar disorder.  (*Id*.)  Nevertheless, they concluded that Plaintiff had only moderate limitations in the "B" criteria listings.  (*Id.*)   In turn, the ALJ explained why he found these opinions persuasive, citing Plaintiff's lack of hospitalizations for psychiatric issues, her normal psychiatric examinations at primary care physician and pain management visits, and her activities of daily living.  The ALJ also discussed, again at some length, new and material evidence in the record dated after Plaintiff's alleged onset date.  (R. at 33-35.)

If the crux of Plaintiff's argument here is that the ALJ cited to *Drummond* and did not cite to *Earley*, such an argument is to no avail.  Courts have recognized that "remand might not be warranted simply because an ALJ cited *Drummond* in support or their findings or failed to cite *Earley*."  *Hoffacker v. Comm'r of Soc. Sec.,* No. 1:23-CV-01010, 2024 WL 692690, at *8 (N.D. Ohio Feb. 20, 2024) (citing *Miner v. Comm'r of Soc. Sec*., 2023 WL 4545948 (N.D. Ohio Jul. 11, 2023) ("Lack of a citation to *Earley* is not, on its own, enough to constitute a failure to apply proper legal standards.")).  "Instead, the court must determine whether the ALJ applied proper legal standards, not whether the ALJ provided proper legal citations.'"  *Id.*  (quoting

*Civitarese v. Commissioner of Soc. Sec.*, No. 1:19-cv-2015, 2020 WL 4366077, at *3 (N.D. Ohio 2020).  If the ALJ properly considered the new evidence submitted with Plaintiff's current disability application, *i.e.*, gave her application a "fresh look," then the ALJ will have complied with *Earley*, whether or not the ALJ cited that case.  *Id.* at *9.  And, importantly, "*Earley* does not prevent adoption of a prior RFC when a subsequent ALJ is persuaded that the prior RFC is still the correct finding, despite the content of new medical evidence."  *Id*. (citing *Earley*, 893 F.3d at 933).  "And under both *Drummond* and *Earley*, a subsequent ALJ is required to determine whether the new evidence relating to the previously unadjudicated period represents a change in the claimant's medical circumstances as compared to the prior adjudicated period."  *Id*. As explained above, that is exactly what ALJ Crockett did here.  Accordingly, the Court rejects Plaintiff's argument that the ALJ applied the incorrect legal standard such that remand is required.

## VI.   CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 10) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.


**IT IS SO ORDERED.**

Date:   **September 9, 2024**                  */s/ **Elizabeth A. Preston Deavers***
                                                **ELIZABETH A. PRESTON DEAVERS**
                                                **UNITED STATES MAGISTRATE JUDGE**